IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD REES, et.al, | CASE NO. CV-F-05-00297 AWI LJO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFFS' MOTION FOR** |
| vs. | **CLASS CERTIFICATION** (Doc. 17) |
| SOUZA'S MILK TRANSPORTATION, CO., et al., | |
| Defendants. | |

Pursuant to a notice filed on February 7, 2005, plaintiffs Richard Rees and Robert Winters ("plaintiffs") seek to certify two classes in this matter. Defendant Souza's Milk Transportation, Co. ("Souza") filed an opposition on February 21, 2006. After review of the opposition, the Court asked for supplemental briefing and vacated the hearing on the motion. The Court requested supplemental briefing on whether the existence of a collective bargaining agreement impacts the claims under the Fair Labor Standards Act or alters the putative class definition. The Court also asked for supplemental briefing on the good cause for plaintiffs' failure to file the motion according to the deadlines established in the Court's preliminary scheduling order. Plaintiffs filed a reply and supplemental brief on March 17, 2006. Souza filed supplemental briefing on March 17, 2006. This matter was submitted on the pleadings without oral argument pursuant to Local Rule 78-230(h). Having considered the moving, opposition, reply papers and the supplemental briefing, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Richard Rees and Robert Winters bring this action individually and on behalf of other truck drivers who now work or have worked for defendant Souza. Plaintiffs allege that Souza has a policy of requiring its truck drivers to work more than forty (40) hours a week without overtime payment. Plaintiff's complaint contains four claims. The first and third claims for relief allege a violation of the Fair Labor Standards Action ("FLSA"), 29 U.S.C. § 210 et seq for plaintiff Rees and plaintiff Winters, respectively. The second and fourth claims for relief allege violation of the California Unfair Competition law ("UCL"), Cal.Bus.&Prof.Code §17200 et seq. for plaintiff Rees and plaintiff Winters, respectively.

Plaintiffs seek certification of two classes. Plaintiffs allege they are members of both classes. The first class (Class 1) is based on willful violations of the FLSA and incorporates the 3-year statute of limitations:

> "All persons who are now employed or have been employed by defendant in the State of California who, on or after February 28, 2002, to the time of trial, have worked as a truck driver hauling dairy products from processing plants to warehouses or retail establishments solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by Souza for those excess hours."

Class 1 would be certified under 29 U.S.C. §216(b) which states in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated.*

The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). This type of action, known as a "collective action," allows potential class members who are similarly situated to the named plaintiffs to file a written consent with the court to "opt in" to the case. *Morisky v. Public Serv. Elect. and Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000).

The second class (Class 2) plaintiff proposes is based on the second claim for relief under UCL (formerly referred to as the Unfair Practices Act "UPA") and incorporates the 4-year status of limitations for such violations.

> "All persons who are now employed or have been employed by defendant in the State of California who, on or after February 28, 2001 to the time of trial, have worked as a truck driver hauling dairy products from processing plants to warehouses or retail establishments solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by defendants for those excess hours."

This class would be certified under Fed.R.Civ.P. 23. The requirements for maintaining a Rule 23 class action are more fully discussed below.

## ANALYSIS & DISCUSSION

This motion is similar to the motions considered in the *Willis v. Cal-Western Transport,* CV-00-5695, *Baganha v. Cal. Milk Transport*, CV-01-5729, *Vasquez v. Jim Aartman, Inc.*, CV-02-5624, and *Aguayo v. Oldenkamp*, CV-04-6279 cases, in which similarly defined classes were certified over similar defendant objections.

**A.  FLSA Claim**

**1.  Similarly Situated**

To determine whether to certify the class, the main issue to be decided is whether the named plaintiffs are sufficiently "similarly situated" to the proposed opt-in plaintiffs that this case may proceed as a collective action. The FLSA provides that employees in interstate commerce shall be paid at one and one-half times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1). The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated" and is known as a "collective action." 29 U.S.C. § 216(b); *Morisky v. Public Serv. Elect. and Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000).

As noted in the *Willis, Baganha, Vasquez* and *Aguayo* actions, Section 216(b) of the FLSA does not define the term "similarly situated," and there is little circuit law on the subject. As explained in the case of *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002), federal district courts have adopted or discussed at least three approaches to determining whether plaintiffs are "similarly situated" for purposes of § 216(b). *See, e.g., Mooney v. Aramak*, 54 F.3d 1207 at 1213 (5th Cir. 1995) (discussing two different approaches adopted by district courts); *Bayles v. American Med. Response of Colo., Inc.*, 950 F.Supp. 1053, 1058 (D.Colo.1996). Under the first approach, a court determines, on an ad hoc case-by-case basis, whether plaintiffs are "similarly situated."

*Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1102-1103. In utilizing this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D.Colo.1997). In doing so, a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1103 (quoting *Bayles*, 950 F.Supp. at 1066). At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of "similarly situated." *See Theissen v. GE Capital Corp*; *Mooney*, 267 F.3d at 1103. During this "second stage" analysis, a court reviews several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the ADEA before instituting suit." *Id.*

Under the second approach, district courts have incorporated into § 216(b) the requirements of current Federal Rule of Civil Procedure 23. *See Theissen*, 267 F.3d at 1103; *Bayles*, 950 F.Supp. at 1060-61 (discussing cases adopting this approach). In a third approach, district courts have suggested incorporating into § 216(b) the requirements of the pre-1966 version of Rule 23, which allowed for "spurious" class actions. *See Bayles*, 950 F.Supp. at 1064.

*Wynn v. National Broadcasting Co.*, 234 F.Supp. 2d 1067 (C.D. Cal. 2002) echoes this two tier analysis. *Wynn* employed the two tier approach and noted the lenient standard for ruling on class certification at the notice stage. The Eleventh Circuit endorsed this "two-tiered" approach to certification of § 216(b) opt-in classes. *See Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (two tiered approach is an effective tool). *Accord Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 680 (D.Kan. 2004) (the court will analyze plaintiff's motion under the lenient "notice stage" standard described above and, in doing so, looks to the substantial allegations in plaintiff's first amended complaint and various affidavits filed by plaintiff.) From review of many cases, this two-tier analysis is the most generally accepted. In addition, this is the analysis the Court has employed in prior similar motions.

Here, the case is more at the "notice" stage and not at the second stage. A preliminary scheduling

order has been entered setting dates for class certification, but a trial date and the related pretrial dates have not been scheduled. Discovery has been limited to the issue of class certification. Discovery on the merits is not complete and the case is not ready for trial. *Morisky v. Public Serv. Elect. and Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000) (employing a stricter standard in analysis where case was beyond first stage.) Thus, the case is more at the notice stage due to the limitation in discovery and pretrial preparation.

At the "notice" stage, the representative plaintiffs bear the burden of demonstrating that they and the class members they seek to represent are similarly situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (The plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination), *cert. denied*, *Helton v. K-Mart*, 519 U.S. 987 (1996). This burden, which is not "heavy," may be met by detailed allegations supported by affidavits. *Id.* at 1097. According to *Grayson,* under section 216(b), "plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination, . . . [and] plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* at 1097 (citations omitted); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.,1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3rd Cir.1988), *aff'd and remanded*, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482 (1989) ("Plaintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits which successfully engage defendant's affidavits to the contrary. Plaintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect which led to the termination or demotion of every member of the class plaintiffs wish to represent, and the reallocation of responsibilities among the remaining, generally younger workers.") Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D.Cal. 2004).

Here, the allegations in the complaint state the basis for the collective action. The detailed allegations in the complaint state that plaintiffs are truck drivers and former truck drivers who worked

for Defendant Souza and who have not been paid overtime compensation. (Complaint ¶ 1.) The complaint alleges that the members were employed by defendants during the liability period as truck drivers, regularly worked in excess of forty hours per week without overtime compensation and drove in intrastate transportation transporting milk products from milk plants to stores or warehouses. Thus, the allegations are detailed allegations setting out the specific conduct allegedly giving rise to liability. (Complaint ¶ 17, 25.)

Plaintiffs submit their declarations in support of the motion. Each plaintiff states in his declaration that he is a former truck driver for defendant. (Doc. 20, Decl. of Richard Rees; Doc. 19, Decl. of Robert Winters.) Both plaintiffs testify that during their employment, their work involved transporting dairy products solely within the State of California from processing plants to warehouses and retail outlets for supermarkets such as Albertson's, Safeway and Raley's. (Doc. 20, Decl. of Richard Rees ¶4; Doc. 19, Decl. of Robert Winters ¶4.) Plaintiffs' declarations, which purport to establish that other truck drivers have not been paid overtime, state the purported goods and routes that the similar truck drivers:

> "Based on my personal observations of Souza's operations that I gained during my employment with Souza's, I know that (a) none of the truck drivers have been paid overtime for any of the hours that worked in excess of forty and less than sixty and (b) other truck drivers that have worked out of the Gustine and Tulare terminals have done the same type of hauling that I have done, i.e. hauling dairy products to warehouses and retail outlets solely within California." (Doc. 20, Decl. of Richard Rees ¶7; Doc. 19, Decl. of Robert Winters ¶7.)

Plaintiffs estimate that there are approximately 30 other truck drivers who fit the class definition. (Doc. 20, Decl. of Richard Rees ¶8; Doc. 19, Decl. of Robert Winters ¶8.)

Thus, the substantial allegations in the complaint supported by the declarations argue in favor of class certification.

2. **Motor Carrier Exemption**

As in the *Willis, Baganha, Vasquez* and *Aguayo* cases, the defendant contends it is exempt from overtime due to the Motor Carrier Safety Exemption. Defendant contends that this defense precludes class certification because it requires a fact-specific inquiry at the class composition stage, at the liability stage, and at the damages stage of all plaintiffs as to whether the exemption applies to the particular

6

plaintiff. Defendant contends that it is a unique inquiry, from that of *Willis, Baganha*, *Vasquez* and *Aguayo* because defendant's operations are different. The difference is that defendant contends the class definition encompasses employees who drove interstate routes because an employee may not have themselves driven dairy products outside of California, but their route may be interstate by virtue of the ultimate destination of the product. 29 CFR 782.7(b). Defendant argues many routes, while driven intrastate, are nonetheless, interstate because either the final destination of the product is outside of California or the product originated outside California and is destined for a California location. Defendant will need to analyze every employee's entire driving history for the class period.

The FLSA provides that employees in interstate commerce shall be paid at one and one-half times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1). Plaintiffs allege that intrastate truck drivers are entitled to overtime compensation pursuant to 29 U.S.C. §207(a), which provides:

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

The FLSA provides many exceptions, one of which is the Motor Carrier exemption, 29 U.S.C. §213(b)(1), which provides that the provisions of 29 U.S.C. §207 shall not apply to:

> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.

Section 31502 of Title 49, in turn, authorizes the Secretary of Transportation, in the interest of safety, to establish "qualifications and maximum hours of service for employees" of motor carriers:

> The Secretary of Transportation may prescribe requirements for--
>
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

The FLSA provides for overtime pay for employees generally. Section 213(b)(1) provides, however, that employees whose qualifications and maximum hours of driving are subject to regulation by the Secretary of Transportation under the Motor Carrier Safety Act are exempt from the overtime provisions of §207(a). The Secretary of Transportation has power to regulate transportation

> 1) between a place in--
>    (A) a State and a place in another State;
>    (B) a State and another place in the same State through another State;

Thus, interstate commerce falls within the jurisdiction of the Secretary of Transportation and is exempt from coverage under FLSA. Moreover, the Secretary of Transportation has jurisdiction to regulate intrastate commerce that "is a practical continuity of movement from the manufacturers or suppliers without the state, through a warehouse and on to customers." *Klitzke v. Steiner,* 110 F.3d 1465, 1469 (9th Cir. 1997); *but see Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 255 (3rd Cir. 2005) *(petition for cert. filed Feb. 10, 2006)* (the "essential character" of truly interstate transport will show some "essential continuity of movement."). Whether such intrastate commerce is exempt is determined on an ad hoc basis:

> "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." *Id.* at 1469.

This is defendant's emphasis: the practical continuity of movement of the finished milk product renders the transportation interstate and not intrastate. The evidence on this point is submitted by Sonya Clay, defendant's "office manager" who testifies:

> "4.   Much of the product that we pick up within California is intended to be shipped overseas or to locations outside California. Much of the product that we transport comes from outside California and is intended to be delivered inside the state of California.
>
> 5.   . . . We pick up the product intended for California customers and customers outside the state and deliver the product to the customer or to the other warehouses." (Clay decl.¶4-5.)

The evidence submitted by defendant in opposition is fairly conclusory. Implicit in defendant's evidence is that all trips are interstate because the product may go out of state or may come in from out

8

of state. The evidence here is that defendant transports a finished product but there is no evidence that defendant <u>exclusively</u> deals with finished product or that all finished product is in "practical continuity." The "practical continuity of interstate commerce" can be broken by processing of the product. *Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp 544 (E.D.Tex 1980) held there was an interruption in the "practical continuity" when a product clearly came to rest instate and was refined and changed by chemical processing. Where a finished product is transported, this may infer "more" interstate commerce. However, as stated, the evidence by defendant on this point is conclusory. Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2nd Cir. 2002).

Defendant cites to an Opinion Letter regarding the FLSA issued by the U.S. Department of Labor Wage and Hour Division, Letter 2005-10, which explains factors to determine if shipments are interstate - such as warehousing, how shipment is tracked, etc. (Doc. 25, Opposition papers p. 4-5.) However, defendant never applied the facts of its business operations to the "factors" of Letter 2005-10.

At this early stage of the class proceeding, all that is required for class certification is substantial allegations supported by declarations. Plaintiffs have satisfied this burden. Plaintiffs may show a prima facie case without an individualized inquiry. An employee seeking to recover unpaid minimum wages or overtime under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Brock v. Seto*, 790 F.2d 1446 (9th Cir. 1986); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687. The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 688, 66 S.Ct. at 1192. The employer bears the burden of proof that an exemption applies. "Employers who claim an exemption applies to their employees must show that the employees fit plainly and unmistakably within its terms." *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir.1984), *cert. granted in part*,

474 U.S. 900, 106 S.Ct. 270 (1985), *and judgment vacated on other grounds*, 475 U.S. 709, 106 S.Ct. 1527 (1986).

In this case, plaintiffs could prove a prima facie case as a collective action because there are no individualized inquiries in the prima facie case. Given the conclusory nature of the evidence regarding defendant's business operations as to the interstate commerce of finished products, the Court cannot determine that transporting "finished products" creates such an individualized inquiry so as to exempt the claims under the Motor Carrier Exemption.

**B.     The Existence of the Collective Bargaining Agreement**

The Court requested supplemental briefing on the issue of whether the existence of collective bargaining agreement would impact the claims under the FLSA. In defendant's opposition, defendant mentioned a collective bargaining agreement with truckers which provides for overtime compensation for hours worked in excess of 60. The Court requested briefing on whether the existence of the collective bargaining agreement, pursuant to the National Labor Relations Act, impacts the claims under the Fair Labor Standards Act.

In its supplemental brief, defendant did not claim the collective bargaining agreement has any preclusive effect under the National Labor Relations Act as to claims under the FLSA. Defendant, however, contends that section 301 of the Labor Management Relations Act ("LMRA") can preempt claims that are substantially dependent on an analysis of the collective bargaining agreement.

LMRA section 301 provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The body of federal common law authorized under LMRA section 301 completely preempts state law claims based on a collective bargaining agreement. The Supreme Court has interpreted the text of § 301 to compel the complete preemption of state law claims brought to enforce collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235 (1968). In addition, although the language of § 301 is limited to "suits for

violation of contracts," the Supreme Court has expanded § 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The LMRA therefore preempts any state cause of action for breach of a collective bargaining agreement. *See Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1522 (9th Cir.1995). "Even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is inextricably intertwined with consideration of the terms of [a] labor contract." *Miller v. AT & T Network Systems*, 850 F.2d 543, 545 (9th Cir.1988) (internal quotations omitted). Thus, state law claims may be preempted.

At this point in the proceeding, the Court finds that Section 301 of the LMRA does not preempt the FLSA. The FLSA is not a state based law and defendant has not provided any authority that the FLSA would be preempted by Section 301. The case relied upon by defendant, *Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), *cert. denied*, 536 U.S. 958 (2002), did not involve preemption of a federal statute. Moreover, the Supreme Court has long held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement. *See*, *e.g.*, *Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177-178, 66 S.Ct. 379, 381-382 (1946) ("The District Court made a finding that the existence and observance of such agreements constituted no bar to the right of the employees to recover under § 16(b) if the Fair Labor Standards Act applied to the case and required overtime pay for work done in excess of a lesser number of hours per week than were stipulated in the agreements. . . We agree with the District Court that the agreements cannot supersede the Act and are not a bar to this action.").

**C.    State Law Claim**

    **1.    Requirements of Rule 23**

Plaintiff also alleges that the failure to pay overtime compensation as required by 29 U.S.C. §207 (a) is a violation of the California Competition Law ("UCL"). UCL prohibits entities from engaging in unfair competition, including unlawful, unfair or fraudulent business practices. A class action for this violation must satisfy Fed.R.Civ.P.23.

All class actions under Rule 23 must meet four prerequisites:

1. Numerosity,
2. Commonality,
3. Typicality,
4. Adequacy of representation.

The burden on the motion is on the party seeking to maintain the class action. In this case, plaintiff must establish a prima facie showing of each of the elements of Rule 23 (a) prerequisites and the appropriate 23(b) ground for a class action. *Taylor v. Safeway Stores, Inc.* 524 F.2d 263, 270 (10th Cir. 1975), *overruled on other grounds by Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983). Plaintiffs need only present sufficient proof to allow the court to come to a "reasonable judgment" on each requirement. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

### 2. Common Law and Fact Predominate

In its opposition, defendant does not challenges the four prerequisites of Rule 23, but challenged that plaintiffs cannot meet their burden under Rule 23(b). Defendant argues that common issues of law or fact do not predominate in this case and that a class action is not superior to other available means to resolve this controversy such as individual suits or administrative claims.

A class action under Rule 23(b)(3) must have common questions of law or fact that predominate over individuals' questions:

> The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Rule 23(b)(3).)

Defendant argues these truck drivers are "motivated" to institute suit as individuals, since they were highly compensated and thus, a class action is not a superior method. However, some of the potential class members are still employed with defendant and are unlikely to institute action against their employer. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (fear of retaliation at their jobs is an additional factor to consider in class certification), *cert. denied*, 528 U.S. 1159 (2000).

Defendant cites *Van Allen v. Circle K Corp*, 58 F.R.D. 562 (C.D. Cal. 1972), for the proposition that class certification should be denied because of the individual inquiry involved. In *Van Allen*, franchisees of Circle K sought a class action to challenge inventory prices of supplies provided to the

franchisees by Circle K. For several reasons, the Court declined to certify a rule 23 action. One reason was that the plaintiff would have individual proof of damages: "completely different presentation of proof as to each such possible plaintiff on the question of damages, if any,--in other words each plaintiff would have a different law suit after all." *Id.* at 564.

At this stage of the litigation, the common questions of law, the overtime requirements, and the common questions of fact predominate and warrant certification.

### 3. Possible Preemption of the UCL Claim

The existence of the collective bargaining agreement may preempt the state law claim.

In *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, plaintiffs alleged that defendant violated California wage and hour laws for overtime. The issue was whether the compensation received by the employees under a complex formula of their collective bargaining agreement constituted the premium wage rates required by California law. *Id.* at 1066-67. However, that issue could not be resolved without interpretation of the collective bargaining agreement. The Ninth Circuit held that the state law overtime claim was preempted because resolution of the claim required interpretation of the collective bargaining agreement. *Compare Cramer v. Consolidated Freightways*, 255 F.3d 683, 691 (9th Cir. 2001) (If the claim is plainly based on state law, § 301 preemption is "not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense."), *cert. denied,* 534 U.S. 1078 (2002).

Here, preemption of the state law claim may be a defense to plaintiffs' state law claims, but it is not currently a defense to the request for class certification. The evidence before the Court does not establish whether the collective bargaining agreement applies to the putative class members or whether the parties contend an interpretation of the collective bargaining agreement is required. The Court leaves the issue for another day and another motion.

### D. Possible Altering of the Class Definition

The Court asked for supplemental briefing on this issue. Defendant argues that the class should be altered because the collective bargaining agreement creates a different overtime compensation obligation for employees hired before May 16, 1989. However, no evidence has been submitted as to
/////

whether any employees who are putative class members fall within this time-frame of the collective bargaining agreement.

**E.     Delay in filing the motion**

The Court requested supplemental briefing on this issue of good cause for delay in filing the motion and on the prejudice suffered by defendant as a result of the delay.

Defendant acknowledges that identifying specific prejudice is difficult, but argues it remains plaintiffs' burden of establishing good cause. Plaintiffs' counsel argues that the plaintiffs are not responsible in any way for the delay in filing. Plaintiffs' counsel acknowledges that it was entirely his fault. The case "got away from him" due to the press of business and personal life. Counsel offers evidence of events in his life which justify the brief delay in filing the motion - 81 days. The cases cited by defendant involved prolonged delay. *McCarthy v. Kleindienst*, 741 F.2d 1406 (1984) (2 year delay).

Plaintiffs have set forth good cause for the delay in the filing of the motion. While the Court should have been informed that delay was necessary, defendant does not offer prejudice due to the delay.

## **CONCLUSION**

For the reasons stated above, the Court RECOMMENDS that the Motion to Certify Class Action be GRANTED under 29 U.S.C. §216(b) and Federal Rule of Civil Procedure 23.

The Court RECOMMENDS that the collective and class be certified as follows:

Collective action under the FLSA:

> "All persons who are now employed or have been employed by defendant in the State of California who, on or after February 28, 2002, to the time of trial, have worked as a truck driver hauling dairy products from processing plants to warehouses or retail establishments solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by Souza for those excess hours."

Class action under the UCL:

> "All persons who are now employed or have been employed by defendant in the State of California who, on or after February 28, 2001 to the time of trial, have worked as a truck driver hauling dairy products from processing plants to warehouses or retail establishments solely within the State of California and have worked in excess of forty (40) hours per week without being paid overtime compensation by defendants for those excess hours."

The Court also RECOMMENDS appointing Jerry Budin, of the Law Office of Jerry Budin, as class representative.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 22, 2006**                               **/s/ Lawrence J. O'Neill**
b9ed48                                                    UNITED STATES MAGISTRATE JUDGE