# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD REES, et.al,

          Plaintiff,

   vs.

SOUZA'S MILK TRANSPORTATION,
CO., et al.,

          Defendants.
_____/

CASE NO. CV-F-05-00297 LJO SMS

**ORDER ON PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT, AS TO
LIABILITY ONLY**

By notice filed on October 25, 2007, plaintiffs Richard Rees, Robert Winters, Angelo Gutierrez, Randy Jauregui, Dana Jones, Arnold Mares, Michael Medrano, Steve Miller, Larry Perriman, Richard Phillips, Virgil Schmidt, Kevin Starkey, Billie Stephens, Paul Thomas, Jr., Mark Wallace, and Tony Wallace move for partial summary judgment on the grounds that there is no genuine issue of disputed fact as to the liability of defendant Souza' Milk Transportation ("Souza") pursuant to Fed.R.Civ.P 56. Defendant Souza filed an opposition on November 13, 2007. Plaintiffs filed a reply on December 4, 2007.  The Court then asked for supplemental briefing on a narrow issue.  The parties submitted their supplemental briefs on December 11, 2007.  The Court thereafter took the motion under submission and vacated the hearing date.

This Court has carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence which it deemed admissible, material and appropriate for summary judgment/adjudication.  Based on the review of the documents filed in support of and in opposition to this motion, the Court issues the following order.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Richard Rees and Robert Winters bring this action individually and on behalf of other truck drivers who now work or have worked for defendant Souza.  Plaintiffs allege that Souza has a policy of requiring its truck drivers to work more than forty (40) hours a week without overtime payment. Plaintiffs' First Amended Complaint contains four claims.  The first and third claims for relief allege a violation of the Fair Labor Standards Action ("FLSA"), 29 U.S.C. § 210 et seq for plaintiff Rees and plaintiff Winters, respectively.  The second and fourth claims for relief allege violation of the California Unfair Competition law ("UCL"), Cal.Bus.&Prof.Code §17200 et seq. for plaintiff Rees and plaintiff Winters, respectively.

By this Court's Order dated April 24, 2006, this matter as been certified as a collective action under 29 U.S.C. §216(b) as to the FLSA claim and a class action under F.R.C.P. Rule 23 as to the state law claim.  (Doc. 32.)  Plaintiffs bring this motion as individuals and not as members of the classes. Plaintiffs state that they are not seeking summary adjudication on behalf of the entire "opt-in" class or on behalf of the "opt-out" class.  Each moving plaintiff is seeking summary adjudication in his individual capacity on the issue of liability under F.R.C.P. Rule 56( c).

Defendant's position is that Plaintiffs and/or members of the classes are exempt from the overtime provisions of the FLSA pursuant to the Motor Carrier safety exemption. 29 U.S.C. §213(b)(1).  Defendant argues that it is not required to present evidence demonstrating that each individual plaintiff is subject to the Motor Carrier safety exemption.

**ANALYSIS AND DISCUSSION**

**A.      Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985).  The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The requirement that an issue be "genuine" relates to the quantum of evidence the Plaintiff  must produce to defeat the defendant's summary judgment motion.  There must be sufficient evidence "that a reasonable jury could return a verdict for the

2

1  nonmoving party." *Anderson,* 477 U.S. at 248.

2      "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477

3  U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving

4  party's case necessarily renders all other facts immaterial," and in such circumstances, summary

5  judgment should be granted "so long as whatever is before the . . . court demonstrates that the

6  standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v.*

7  *Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial

8  burden of identifying for the court those portions of the material on file that it believes demonstrates

9  the absence of any genuine issues of material fact," the burden of production shifts and the

10  nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W.*

11  *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting

12  F.R.Civ.P. 56(e)).

13      To establish the existence of a factual dispute, the opposing party need not establish a

14  material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be

15  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First*

16  *National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)*; T.W. Elec. Serv.*, 809 F.2d at

17  631. The opposing party "must do more than simply show that there is some metaphysical doubt as

18  to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to

19  find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

20  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is

21  to be believed and all reasonable inferences that may be drawn from the facts placed before the court

22  must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

23      "If the nonmoving party fails to produce enough evidence to create a genuine issue of

24  material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at

25  1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates

26  the entry of summary judgment, after adequate time for discovery and upon motion, against a party

27  who fails to make the showing sufficient to establish the existence of an element essential to that

28  party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving

party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.**     **The Supplemental Briefing on the Issue of the Individual Claims**

The Plaintiffs are moving for summary judgment on the issue of liability.  Plaintiffs bring this motion as individuals and not as members of the classes.  Each individual "plaintiff" submitted his own Statement of Undisputed Facts. Defendant did not submit proof of its defense (Motor Carrier Safety Exemption) as to each individual plaintiff.  Plaintiffs now argue that defendant's lack of proof as to each individual member is fatal to defendant's opposition.

The Court considered that the procedural posture of this case presented the novel issues of whether the individual class members may pursue individual's claims and whether proof as to each individual is needed for defendant's defense.  The Court, therefore, requested the parties submit supplemental briefing on the issue of individual proof for a certified class and collective action.

In their supplemental brief, plaintiffs argue that it is their "right" to seek individual summary adjudication pursuant to Rule 56.  Plaintiffs do not provide any controlling or persuasive case authority on the point, and the Court has been unable to find any, that permits a <u>class member</u> to pursue, <u>individually</u>, class claims in the case in which the class is pending.

The claims in the case are pending before the Court as part of a certified collective and class action.  The claims are those of the class and not of the individuals.[1]  Indeed, this Court certified the collective action for claims as follows:

Collective action under the FLSA:

"All persons who are now employed or have been employed by defendant in the State of California who, on or after February 28, 2002, to the time of trial, have worked as a truck driver hauling dairy products from processing plants to warehouses or retail establishments solely within the State of California and have worked in excess of forty(40) hours per week without being paid overtime compensation by Souza for those excess hours."

---

[1] There is no evidence that the individuals have opted out of the collective action.

4

1   The FLSA allows one or more employees to pursue an action in a representative capacity for "other

2   employees similarly situated" and is known as a "collective action." 29 U.S.C. § 216(b). Having

3   certified the case, the claims are those of the class.  Any other interpretation would permit an

4   individual class member to undermine the class process by individually pursuing his claims while

5   remaining a member of the class.  Such a process would permit the class member to "cherry pick"

6   the result - - being unsuccessful, individually, he could await the outcome of the class result, or vice

7   versa.  Therefore, the Court finds in this collective and class action, the individuals class members do

8   not have the right to pursue, individually, the class claims.

9        As to the defense, plaintiffs argue that the Court should grant the motion because defendant

10   failed to provide proof as to the individual plaintiffs and whether each actually engaged in interstate

11   commerce.   The Court agrees with defendant that "to require individualized proof of the kind

12   plaintiffs argue is lacking would be inconsistent with the basic concept of certified collective and

13   class actions." (Doc. 171, Defendant's Supplemental Brief p.2.)  Plaintiff cannot have it both ways -

14   require a class/collection action based upon factually and legally "similarly situated" plaintiffs, yet

15   preclude defendant from taking advantage of the "similarly situated" plaintiffs.  As defendant argues,

16   if defendant must list individual facts for each plaintiff despite the similarly situated status of the

17   plaintiffs, the class is not similarly situated.

18   **C.    Fair Labors Standards Act**

19        The FLSA provides that employees in interstate commerce shall be paid at one and one-half

20   times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1).

21   Plaintiffs allege that intrastate truck drivers are entitled to overtime compensation pursuant to 29

22   U.S.C. §207(a), which provides:

23   (1) Except as otherwise provided in this section, no employer shall
     employ any of his employees who in any workweek is engaged in
24   commerce or in the production of goods for commerce, or is employed
     in an enterprise engaged in commerce or in the production of goods for
25   commerce, for a workweek longer than forty hours unless such
     employee receives compensation for his employment in excess of the
26   hours above specified at a rate not less than one and one-half times the
     regular rate at which he is employed.

27

28

5

1        **1.     Prima Facie Case under the FLSA**

2        An employee seeking to recover unpaid minimum wages or overtime under the FLSA "has

3   the burden of proving that he performed work for which he was not properly compensated." *Brock v.*

4   *Seto*, 790 F.2d 1446 (9th Cir. 1986); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66

5   S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).  "[A]n employee has carried out his burden if he proves that

6   he has in fact performed work for which he was improperly compensated and if he produces

7   sufficient evidence to show the amount and extent of that work as a matter of a just and reasonable

8   inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687.  The burden then shifts to the

9   employer to show the precise number of hours worked or to present evidence sufficient to negate

10  "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 688, 66 S.Ct.

11  at 1192.

12       For purposes of this motion only, the Court finds that the evidence submitted by plaintiff

13  establishes a prima facie case for the class.[2]  In this case, plaintiffs have presented <u>undisputed</u>

14  evidence of plaintiffs' *prima facie* case as a collective action.  Plaintiffs present evidence that they

15  were truck drivers for defendant (Doc. 153, Fact no. 1), that they drove their trucks more than 40

16  hours per week (Doc. 153, Fact no. 2) and that they were not paid for their time in excess of 40 hours

17  (Doc. 153, Fact no.3).  Defendant does not dispute any of these facts.  Defendant concedes that

18  plaintiff has made a *prima facie* case.

19       Rather, defendant's focus is on its affirmative defense that Motor Carrier Safety exemption to

20  the FLSA.

21       **2.     Motor Carrier Safety Exemption Defense**

22       The FLSA provides many exceptions, one of which is the Motor Carrier Safety exemption,

23  ———————————

24       [2] Plaintiffs submitted a separate statement of undisputed facts for each individual which are identical for each
25  individual.  Plaintiffs state "that the individual Statements of Undisputed Facts submitted by each plaintiff were not submitted
    because a detailed, individual inquiry is required to establish liability, but simply in order to establish the prima facie case
26  that each plaintiff is rightfully a member of the class." (Doc. 170, Plaintiffs' Supplemental brief, p.3:15-22.)  If the Statement
    of Undisputed facts were not submitted for the purposes of establishing liability, then the motion for summary judgment
27  would be denied on that point.  The issue before the Court is "liability."  Indeed, whether the plaintiffs are "rightfully a
    member of the class" does not establish liability under the FLSA.  Establishing liability is the purpose of plaintiffs' motion.
28  Further, plaintiffs argue that they are making this motion <u>individually</u>, therefore whether the persons are properly members
    of the class, under plaintiffs' argument, should be irrelevant.

6

29 U.S.C. §213(b)(1), which provides that the provisions of 29 U.S.C. §207 shall not apply to:

> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.

Section 31502 of Title 49, in turn, authorizes the Secretary of Transportation, in the interest of safety, to establish "qualifications and maximum hours of service for employees" of motor carriers:

> The Secretary of Transportation may prescribe requirements for--
>
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

The FLSA provides for overtime pay for employees generally.  Section 213(b)(1) provides, however, that employees whose qualifications and maximum hours of driving are subject to regulation by the Secretary of Transportation under the Motor Carrier Safety Act are exempt from the overtime provisions of §207(a).   The Secretary of Transportation has power to regulate transportation

> 1) between a place in--
>
> (A) a State and a place in another State;
> (B) a State and another place in the same State through another State;

Thus, interstate commerce falls within the jurisdiction of the Secretary of Transportation and is exempt from coverage under FLSA.  Moreover, the Secretary of Transportation has jurisdiction to regulate intrastate commerce that "is a practical continuity of movement from the manufacturers or suppliers without the state, through a warehouse and on to customers."  *Klitzke v. Steiner,* 110 F.3d 1465, 1469 (9th Cir. 1997); *but see Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 255 (3rd Cir. 2005), *cert. denied*, 547 U.S. 1093 (2006) (the "essential character" of truly interstate transport will show some "essential continuity of movement.").  Whether such intrastate commerce is exempt is determined on an ad hoc basis:

> "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation."  *Klitzke,* 110 F.3d at 1469.

7

1   Thus, the Motor Carrier exemption defense can be established by (1) showing that a driver can

2   reasonably be expected to drive across state lines, or (2) drivers hauled goods in "the practical

3   continuity of movement" in interstate commerce. *Watkins v. Ameripride Serv.*, 375 F.3d 821, 825-26

4   (9th Cir. 2004).

5        In this case, defendant focuses on the second means of showing the Motor Carrier safety

6   exemption.  Defendant argues that its drivers are engaged in interstate commerce because the

7   products were transported "in the practical continuity of movement" in interstate commerce.[3]

8   Defendant argues the practical continuity of movement of the finished milk product renders the

9   transportation interstate and not intrastate.

10       **(A)      Plaintiffs' Argument that there is No Evidence of Shipper's Intent**

11       Plaintiffs argue that defendant has not raised an issue of fact because defendant has failed to

12   introduce evidence of the "shippers intent."  Plaintiff notes that to determine the "practical continuity

13   of movement" in interstate commerce, the shippers intent has to be ascertained.  Plaintiffs notes that

14   Souza is not the "shipper" and there is no evidence of the intent of Souza's customers, i.e., the

15   "shippers."

16       Plaintiff relies upon an opinion letter by the Department of Labor ("DOL") using several

17   factors employed by the DOL to determine the shippers' intent.  On January 11, 2005, the DOL,

18   upon consideration of a request for an opinion regarding certain intrastate delivery drivers, set forth

19   factors to apply in determining whether the "fixed and persisting intent" of the shipper is that goods

20   continue in interstate commerce when moving goods on a wholly intrastate leg of their journey,

21   providing:

22       1. Even if a shipper does not know the ultimate destination of specific shipments, it bases its

23   determination on the total volume to be shipped through the warehouse on projections of customer

24   ───────────────

25       [3] Indeed, Defendant does not present evidence on the first means of proof - - showing that a driver can reasonably
26   be expected to drive across state lines. There is no evidence that Souza's drivers were expected to drive across state lines.
     The only evidence submitted on this point is for class member Steve Miller.  (Doc. 154, Fact 38.)  The evidence submitted
     by defendant shows that Mr. Miller traveled across state lines, rendering his travel "interstate," only in 2001.  The evidence
27   does not establish interstate travel for any other period.  As plaintiff correctly notes, the statute of limitations for FLSA
     violations is three years.  Given the date this action was filed, the earliest date for calculating damages for violation of the
28   FLSA is February 2002. Thus, the evidence is not relevant.

1  demand.

2       2. No processing or substantial product modification of substance occurs at the warehouse or

3  distribution center.

4       3. While in the warehouse, the merchandise is subject to the shipper's control and direction to

5  the subsequent transportation.

6       4. Modern tracking systems allow tracking and documentation of most, if not all, of the

7  shipments coming in and going out of the warehouse or distribution center.

8       5. The shipper or consignee must bear the ultimate payment for transportation charges even if

9  the warehouse or distribution center directly pays the transportation charges to the carrier.

10      6. The shipments move through the warehouse pursuant to a storage in transit provision.

11 See January 11, 2005 Opinion Letter, "Intra/interstate transportation of gasoline and section

12 13(b)(1)" FLSA2005-10 (citing 57 Fed.Reg. 19812, 19813 (May 8, 1992)).  The objective of these

13 factors is to determine whether the goods continue in interstate commerce when moving goods on a

14 wholly intrastate leg of their journey, and by extension, whether the intrastate journey may be

15 considered interstate in character.

16      The Court notes, however, that DOL opinion letters do not warrant significant judicial

17 deference. *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621

18 (2000) ("[i]nterpretations such as those in opinion letters ... do not warrant . . . deference."); *see also*

19 *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (opinion letters are

20 entitled to respect but only to the extent that they have the power to persuade).

21      Courts determine the Motor Carrier safety exemption by focusing on how the employer's

22 business and the employees' activities affect interstate commerce.  In this Circuit, the Ninth Circuit

23 applies the "practical continuity of movement" test to the employer's business to determine whether

24 the exemption applies to its employees.

25           "Whether transportation is interstate or intrastate is determined by the
            essential character of the commerce, manifested by [the] shipper's
26          fixed and persistent transportation intent at the time of the shipment,
            and is ascertained from all of the facts and circumstances surrounding
27          the transportation."  *Klitzke*, 110 F. 3d at 1469.

28

1    The Plaintiffs' activities alone do not determine the applicability of MCA exemption. To conclude

2    otherwise would allow the employer that is engaged in interstate commerce to manipulate the

3    employee's activities to avoid FLSA coverage.  The shipper's intent alone does not determine the

4    applicability of the Motor Carrier safety exemption.  There is nothing in any authority that requires,

5    as plaintiffs suggest, direct evidence of the intent, as opposed to indirect evidence based on the

6    totality of the facts. The Court must also consider the Defendant's business and Plaintiffs' role in that

7    business.

8              **(B)      Methods of Proof of the Motor Carrier Safety Exemption**

9              It is defendant's burden to prove the exemption.  To ensure employee's maximum coverage

10   under the FLSA, exemptions under Section 213 are construed narrowly against the employer

11   asserting their applicability, and the employer carries the burden of proving that an exemption

12   applies. *See*, *e.g.*, *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15

13   L.Ed.2d 694 (1966).  The Ninth Circuit Court has recognized that, "[e]mployers who claim an

14   exemption applies to their employees must show that the employees fit plainly and unmistakably

15   within its terms." *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir.1984), *cert.*

16   *granted in part*, 474 U.S. 900, 106 S.Ct. 270, 88 L.Ed.2d 224 (1985), *and judgment vacated on other*

17   *grounds*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

18             Defendant argues that it is relying on an underline-employer-based defense rather than an employee-

19   based defense, i.e., the focus of the defense would be on the character and scope of the employer's

20   aggregate interstate business rather than on an individual assessment of whether each truck driver is

21   exempt because that driver engages in interstate transportation.

22             The Court is mindful that there is disputed legal authorities as to how the Motor Carrier

23   safety exemption is proven - by individual or aggregate employer transactions.  This Court has

24   confronted this issue previously.  There is not controlling case authority which states how the Motor

25   Carrier Safety Exemption defense is proved, i.e., employer wide or by individual employee.  The

26   cases seem to analyze the issue both ways. The analysis, however, appears to depend on the remedy

27   sought.

28             The defense has been asserted on an "aggregate" basis in the seminal case of *Morris v.*

1   *McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947).  The Supreme Court held applicable the

2   motor carrier exemption to all drivers and mechanics of a small common carrier, even though the

3   interstate carrier services rendered by the company constituted less than 4% of its total carrier

4   services.  Those interstate trips were found not to have been distributed equally among the

5   company's drivers.  Despite the small number of interstate hauls actually made and the unequal

6   distribution among the firm's drivers of such hauls, the Court nevertheless found that the

7   performance of such work, within the Motor Carrier exemption.  The interstate work was "shared

8   indiscriminately by the drivers and was mingled with the performance of other like driving services

9   rendered by them otherwise than in interstate commerce." 332 U.S. at 433, 68 S.Ct. at 136. The

10  Court in *Morris* based its decision on the fact that those interstate routes which were serviced were

11  assigned indiscriminately among all the drivers, so that <u>all of the carrier's drivers</u> were eligible to

12  receive an interstate route at some point throughout a year.  *Id.* at 433, 68 S.Ct. at 136.

13      The *Morris v. McComb* case did not involve an action for recovery of overtime

14  compensation.  It was a case for injunctive relief by the Secretary of Labor  to restrain the defendant

15  from future failure to pay the employees overtime compensation in accordance with FLSA.  The

16  Court hinted that a further fact inquiry may be necessary if this case were some other kind:

17          "There is nothing in the record showing the extent to which the respective garage men
            and laborers devoted themselves to the several classes of work above mentioned and,
18          <u>if this were an action to recover overtime compensation for individual employees, it
            would be necessary to determine that fact.</u>"  *Morris v. McComb*, 332 U.S. at 430.
19

20  The court, however, did not decide <u>how</u> the exemption is proved.  The court stated that since the case

21  only involved an injunction for future violation, "the situation can be met by limiting the injunction

22  to the appropriate classifications of workers."  *Id.* at 430.  The overall language suggests the <u>character</u>

23  of the work would be determinative.

24      The exemption need not be determined on the employer/aggregate basis.  *Goldberg v. Faber*

25  *Industries*, Inc., 291 F.2d 232 (7th 1961).  In *Faber Industries,* a private carrier collecting meat scraps

26  for its rendering plants had five permanent routes and drivers operating across a state line and 15

27  permanent routes and drivers operating wholly upon highways of a single state.  The case involved

28  suit to restrain defendant from violating the overtime provisions of the Fair Labor Standards Act

11

1  with respect to the truck drivers. The District Court had concluded that as five of the drivers were

2  admittedly engaged in interstate commerce, the other fifteen were in the same category. The District

3  Court reasoned that:

4  "a carrier such as defendant is either fish or fowl under the Motor
   Carrier Act, not half fish and half fowl. If the Commission has power
5  to control any part of a carrier's operations, it has power to extend its
   control, through the carrier, over all employees who work within the
6  controlled classification."

7  On appeal, the Seventh Circuit reversed, finding that the District Court had erred in holding the

8  employer's operations were controlling. The appellate court said that the test is the nature of the

9  transportation performed by the employees.

10  Another injunctive relief case is *Brennan v. Schwernan Trucking Co.*, 540 F.2d 1200 (4th Cir.

11  1976).  The Fourth Circuit Court of Appeals specifically acknowledged that as long as work was

12  assigned on an "indiscriminate basis," <u>all</u> of Schwernan's drivers and mechanics were exempt from

13  the overtime pay provisions under 29 U.S.C. § 213(b)(1). *Brennan v. Schwernan Trucking Co.*, 540

14  F.2d at 1205 (emphasis added). And, *Marshall v. Aksland*, 631 F.2d 600 (9th Cir. 1980) also involved

15  injunctive relief.  The Ninth Circuit Court of Appeals looked at the overall operation of the trucking

16  business to determine the exemption.  The court specifically noted that the drivers involved

17  "conformed to the Motor Carrier Safety Regulations, maintained Department of Transportation

18  forms, and <u>shared interstate hauls on a rotating basis</u>." *Marshall v. Aksland*, 631 F.2d at 602.  Thus,

19  the Court held that the trucking business was within the Motor Carrier exemption from the FLSA.

20  Because the employer's policy of randomly assigning interstate routes to any employee, the courts in

21  *Brennan* and *Marshall* found the exemption applied to all such employees.

22  *Morisky v. Public Serv. Elec. And Gas Co.*, 111 F.Supp.2d 493 (D. N.J. 2000) illustrates that

23  "job duties" determine the character of the work.  In *Morisky*, the court was asked to certify a class

24  under FLSA for recovery of overtime compensation for operations workers of a utility provider.  In

25  *Morisky,* plaintiffs brought action against the employer for improperly classifying them as exempt

26  "administrative" employees rather than non-exempt "production" workers.  Defendant argued that

27  class certification was inappropriate because plaintiffs were not the proper representatives since each

28  employee performed varied job duties and it required highly fact-specific analysis of each

12

1  employee's job responsibilities.  Plaintiff argued that the defendants' "common scheme" to deny

2  plaintiffs' overtime binds the class.  The court agreed with defendants and found that "'similarly

3  situated' in this case must be analyzed in terms of the nature of the job duties performed by each

4  class member, as the ultimate issue to be determined is whether reach employee was properly

5  classified as exempt."  *See also Thiessen v. General Elec. Capital Corp.*,13 F.Supp.2d 1131

6  (D.Kan.,1998) (Numerous, particularized reasons set forth by employers as defenses with respect to

7  each of employment actions challenged as violative of the ADEA warranted decertification of

8  collective action; individual issues would predominate at trial.)

9       In *Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp 544 (E.D.Tex 1980), 39 individual

10  truck drivers sought overtime compensation under the FLSA from their employer, Goodyear.  The

11  case did not involve a collective action and there is no indication that collective action was ever

12  sought.

13       Defendant Goodyear operated a synthetic rubber plant in Beaumont, Texas and hired drivers

14  to transport necessary petroleum-based ingredients to its plant for processing.  The ingredients were

15  transported both interstate and intrastate.  Goodyear claimed that it was exempt from the FLSA by

16  the motor carrier exemption due to its interstate activities.  The main issue in *Kimball* involved

17  whether Goodyear's intrastate commerce was in the "practical continuity of interstate commerce"

18  such that the drivers were exempt under the motor carrier exemption.  Following a court trial, the

19  court held there was an interruption in the "practical continuity" when a product clearly came to rest

20  instate and was refined and changed by chemical processing.  The court held that processing of the

21  petroleum products both before and after intrastate transport was sufficient to break the continuity of

22  transportation.  Thus, the employees were not exempt by the motor carrier exemption.

23       As relevant to the instant case, the *Kimball* court reviewed the transportation evidence on an

24  aggregate basis, and did not determine for each employee individually whether the employee was

25  exempt. At trial, the evidence indicated that less than one percent of the hauls were interstate while

26  the rest, over ninety-nine percent, were intrastate within Texas.  *Id.* at 546.  The evidence showed

27  that the drivers made a total of 49,329 hauls, only 88 of which were possible interstate trips,

28  representing .17% of the total hauls.  *Id.* at 547.  The court then divided the .17% by the 39 plaintiffs

1   for a total percentage of .004% **average interstate trips** for each employee. *Id.* The court said that

2   the interstate trips, at .004% average interstate trips, were de minimus and therefore the drivers were

3   not exempt from FLSA.

4   Thus, the court analyzed the trips on an aggregate basis, rather than looking at each employee

5   individually for the trips the employee made. The court did not analyze that driver John Smith made

6   X many trips and X many were inter/intrastate or that driver Jane Doe made Y many trips and Y

7   many were interstate/intrastate. *Accord Dole v. Circle "A" Constr., Inc.*, 738 F.Supp. 1313, 1322

8   (D.Idaho 1990) (a driver is not exempt under the Motor Carrier Act merely because he takes one or

9   two interstate trips); *Coleman v. Jiffy June Farms, Inc.*, 324 F.Supp. 664 (S.D.Ala.1970), *aff'd*, 458

10  F.2d 1139 (5th Cir.1971)(where only 0.23% of driver employee's deliveries were interstate, Motor

11  Carrier Act exemption did not apply).

12  Plaintiffs rely upon *Dole v. Circle "A" Const., Inc.*, 738 F.Supp. 1313, 1319 (D.Idaho 1990)

13  for the proposition that the individualized proof is required for the defense. In *Circle A*, Circle A, as

14  a private motor carrier, sought to apply the motor carrier exemption to all drivers and mechanics.

15  The Court stated that "this court finds that the Supreme Court [*Morris*], and the Ninth Circuit Court

16  of Appeals treat Section 213(b) as an "employee" based exemption." *Dole v. Circle "A" Const., Inc.*,

17  738 F.Supp. at 1319. Thus, the language appears to support plaintiffs' argument. Nonetheless, the

18  evidence before the court was not specific to each individual driver. Rather, the evidence was the

19  "character" of the work performed by the employees. The court quoted from a declaration submitted

20  as evidence which merely stated: "each driver hired is potentially an interstate driver; each could be

21  called upon to transport shipments in interstate commerce," (2) "each driver hired by Circle A must

22  satisfy the United States Department of Transportation's specifications ..." and (3) that "[i]t is Circle

23  A's policy and practice to randomly assign drivers." *Id.* Thus, the evidence in *Circle A* did not

24  establish that individual Driver X drove specific trips, or individual Driver Y drove specific trips.

25  The evidence focused on the <u>character</u> of the work perform. Thus, for purposes of this motion, the

26  Court finds that the proof of each individual's driving patterns is not necessary.

27  **3.**     **Defendant Raises Issues of Fact**

28  Defendant submits basically two forms of evidence in support of its defense: deposition

1  testimony of Manual Souza and a declaration of Sonya Clay.

2      The evidence before the Court establishes that the character of the shipments which Souza

3  transports is at times interstate in character.  The President of Souza, Manual Souza, Jr. testified:

4          "Sometimes we take [Morning star's products] to a warehouse and
           they distribute them to other trucking companies that haul them out of
5          the state and all over.  We take them to Albertson's.  Albertson's
           warehouse distributes to their stores in Arizona, their stores in Nevada,
6          their stores in Oregon.  The same with Safeway.  The same with
           Vonn's.  The same with Raley's.  The same with Costco.  Every one of
7          my customers, I take a product that Morningstar puts together and it's
           a mixture of product and they distribute it out of there.  I do not deliver
8          to grocery stores."  (Doc. 155, Exh. A, Depo of Manual Souza, Jr. P.
           39.)

9

10     Defendant also transports products from processing plants. Mr. Souza also testified that

11  defendant transports cottage cheese, yogurts, sourcream, coffee creamers to a creamery, where

12  "[t]hey put it together in other trucks and ship it out of their to different destinations," including

13  Texas. (Doc. 155, Exh. A,, Depo of Manual Souza, Jr. p. 45.)  Mr. Souza further testified that

14  defendant's customer, Morningstar, will ship product from Texas to Tulare, then ship the same

15  product to Oregon. (Doc. 155, Exh. A,,  Depo of Manual Souza, Jr. p. 46.)

16     This evidence raises the inference that the products pass through Souza's transportation

17  services on their way to the ultimate destination, which may or may not be out of state.  See *Watkins*

18  *v. Ameripride Services*, 375 F.3d at 825 ("We have held that even intrastate deliveries can be

19  considered part of interstate commerce if the property in question was originally delivered from

20  out-of-state and the intrastate route is merely part of the final phase of delivery.")  When goods are

21  received at a distributor's warehouse from out-of-state with the intent that they be delivered by the

22  distributor within the state to a predetermined purchaser, the pause at the warehouse does not

23  conclude the continuity of interstate movement.  *See Walling v. Jacksonville Paper Co.*, 317 U.S.

24  564, 63 S. Ct. 332, 87 L. Ed. 460 (1943).

25      Other testimony from Mr. Souza indicates that Souza picks up a completed product from a

26  customer's warehouse facility and delivers the product to Pacific Coast Container which reloads the

27  product for shipment to Hawaii.  (Doc. 155, Exh. A,,  Depo of Manual Souza, Jr. P. 47-48.)  The

28  inference from this evidence is that goods are not stored for extensive periods before they continue in

15

commerce.  Indefinite storage in a warehouse may transform goods shipped from out-of-state into intrastate deliveries. *Watkins v. Ameripride Services*, 375 F.3d at 826.  Given the perishable nature of the product shipped, a reasonable inference is that the products reside for a minimal time before making their way to their ultimate destination.

First and foremost, the determination regarding whether the commerce at issue is interstate or intrastate has always been determined by a totality of circumstances. *Atlantic Coast Line R.R. v. Standard Oil Co.*, 275 U.S. 257, 268, 269, 48 S.Ct. 107, 72 L.Ed. 270 (1927) (holding that in order to determine whether commerce is inter- or intra states, courts must analyze "the essential character of the commerce" by examining the facts). Based on the totality of the evidence submitted by Mr. Souza and the reasonable inferences to be drawn therefrom, the products can be shipped from out-of-state to California, from which Souza will deliver to a warehousing facility, and vice versa, as part of a continuing transport of the product to its ultimate destination.

The second evidence submitted by defendant is the declaration of Sonya Clay, defendant's "office manager." (Doc. 156).  Plaintiff objects to the declaration on several grounds, such as lack of foundation, lack of personal knowledge, conclusory, among other objections.  Ms. Clay testifies that:

> 4.   I am aware that the product Souza Trucking drivers pick up at may of our customers is destined for locations outside of California.
>
> 5.   I know that the produce that Souza Trucking drivers deliver to customers in the San Diego area is immediately shipped to Mexico.
>
> 6.   I know that product Souza Trucking drivers deliver to container customers in the San Francisco Bay/Oakland port area is destined for Hawaii and to overseas countries.  (Doc. 156, Clay Dec. ¶¶4-5.)

The Court need not reach these objections or the evidence submitted by Sonya Clay.  The Court finds that the evidence submitted by defendant of Manual Souza is sufficient to raise an issue of fact.

/////

/////

/////

1

## CONCLUSION

2      For the foregoing reasons, plaintiffs' motion for partial summary judgment on the issue of
liability is DENIED. IT IS SO ORDERED.

3

**Dated:**   **December 14, 2007**           **/s/ Lawrence J. O'Neill**
4                                          UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28